**EMPLOYERS CASUALTY COMPANY,**
Appellant,

v.

**SCOTT ELECTRIC COMPANY, Appellee.**
**No. 869.**

Court of Civil Appeals of Texas,
Corpus Christi.

Aug. 29, 1974.

Rehearing Denied Sept. 19, 1974.

Jack Hebdon, Groce, Locke & Hebdon, San Antonio, for appellant.

Richard B. Stone, Stone, Berryman & Giles, Inc., Corpus Christi, for appellee.

OPINION

YOUNG, Justice.

Because of the failure of the insurer, Employers Casualty Company, to defend

under a general liability policy, the insured, Scott Electric Company, brought this suit for damages for an accident that occurred on October 4, 1968. The defense was that notice of the accident was not given by the insured to the insurer "as soon as practicable" as required by a provision in the "conditions" of the policy.

Trial was to a jury. The jury found that Scott gave notice of the accident to Employers as "soon as practicable" following the accident considering all the facts and circumstances surrounding the occurrence. Judgment, based on that jury verdict, was entered for Scott against Employers for $27,350.12. The defendant-insurer has appealed.

The gist of appellant's complaint on appeal is that appellee did not present a legal reason for delaying notice of the accident for thirteen months: October 4, 1968, accident happened; November 7, 1969, notice given.

The accident that generated this suit was an explosion of volatile vapors in a barge located in the dock area of Rincon Shipyard, Inc. Besides causing injury to the barge, the explosion caused permanent injuries to one and death to another of Rincon's employees. Part of Rincon's business was that of blowing volatile vapors out of barges. For that its employees used three electrical blowers, one made by General Electric Company and two by Coppus Manufacturing Company.

Within an hour after the explosion, L. R. Baker, an electrician and vice-president for Scott, heard the explosion news on his car radio and went immediately to the scene to offer assistance because Rincon was one of Scott's customers. While there, for a period of 30 to 40 minutes, he made a visual investigation of the physical facts and saw: one Coppus blower intact, the frayed but unburned ends of a cable from another blower, the main breaker switch in the "off" position. From all

of this he concluded that the electricity was not operating the blowers just prior to the explosion on the barge. At the scene Baker also learned of the injury of one and the death of the other of the Rincon employees.

For three months before the explosion, Scott (by Baker personally) had made a total of four service calls, involving 6½ hours of labor, to Rincon; Baker worked on a blower (not involved in the explosion), repaired cables, and checked breakers during this period.

During the ensuing few months after the explosion, Baker was questioned about the accident facts on three occasions: at the Coast Guard Offices; at the office of Rincon's attorney; and by an insurance adjuster for Rincon. According to Baker, on none of these occasions was there a suggestion that the explosion was caused electrically nor was there any indication that Scott had been at fault in its repairs or service calls regarding any of the equipment used by Rincon prior to the explosion. Nor was that suggestion or indication made at a Department of Labor hearing, about a year after the explosion, where Baker testified about the safety of all the equipment Rincon was then using.

On November 5, 1969, Scott was served with citation in a suit filed in the Federal district court sitting in Corpus Christi, Texas. On the day prior, this suit was filed against Scott, among others, by the widow of the deceased Rincon employee. In her petition she alleged that Scott:

". . . was in the business of servicing and repairing electric motors and did, a short time prior to the date of the explosion made the basis of this suit, inspect the electrical motors owned by Rincon Ship Yard, Inc., with instructions to make certain that said motors were explosion proof, however, the inspection and such repairs as were done by them

were done in a careless and negligent manner so that said electric motors continued to emit sparks which resulted in the explosion of the 'Sun Chem 100' (barge) on October 4, 1968, and the untimely death of Richard Kirkaldy."

On November, 7, 1969, Scott delivered this citation to Employers. Employers does not complain about the timeliness of Soctt's delivery of the citation to it. This citation was the first notice of the accident Scott had given to Employers; of this they do complain. Consequently, on November 24, 1969, Employers notified Scott that it, the insurer, had no obligation to Scott to defend, to negotiate settlement, or to pay any adverse judgment. Scott then employed counsel of its own choosing to represent it in the Federal action. Trial thereafter began in the Federal action. After four days of trial, the litigation was settled for $247,500.00; Scott's contribution was $15,000.00. For that contribution, attorney's fees, and other litigation expense, Scott brought this suit.

The appellant, in its first four points, attacks the jury finding of timely notice of the accident by no evidence, insufficient evidence, and against the greater weight and preponderance of the evidence complaints. Further appellant asserts that the trial court should have granted its motions for instructed verdict and judgment non obstante veredicto.

■ In considering these points we will be guided by the principles set out in Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.Law Rev. 361 (1960) and cases therein cited. The no evidence point requires us to consider only the evidence and inferences favorable to the jury finding. The other points require us to consider all of the evidence.

■ Appellant urges that the principles controlling the disposition of this case are: if the insured delays notice of an accident to its insurer with no reasonable excuse for the delay based upon a reasonable in-

vestigation of the accident facts by the insured, then the insurer can avoid the insurance contract because notice was not given as soon as practicable. For support, the appellant cites Dunn v. Travelers Indemnity Co., 123 F.2d 710 (5th Cir. 1941); Members Mutual Insurance Company v. Cutaia, 476 S.W.2d 278 (Tex.Sup.1972); Klein v. Century Lloyds, 154 Tex. 160, 275 S.W.2d 95 (1955); New Amsterdam Casualty Co. v. Hamblen, 144 Tex. 306, 190 S. W.2d 56 (1945); Texas Glass & Paint Co. v. Fidelity & Deposit Co., 244 S.W. 113 (Tex.Com.App.1922, opinion adopted); National Surety Corporation v. Diggs, 272 S.W.2d 604 (Tex.Civ.App.—Fort Worth 1954, n. r. e.). We agree with the holdings in those cases. These cases, however, recognize the further principle that notice "as soon as practicable" means notice within a reasonable time, and what is a reasonable time depends upon the facts and circumstances in each particular case.

■ In our case this further principle was tracked in the only special issue submitted to the jury. That issue and the jury's finding favorable to Scott is:

"Do you find from a preponderance of the evidence that Scott Electric Company gave notice to Employers Casualty Company of the accident of October 4, 1968 at Rincon Shipyard as soon as practicable?

'As soon as practicable' means within a reasonable time following the accident taking into consideration all of the facts and circumstances surrounding the occurrence.

Answer 'We do' or 'We do not'

Answer: 'We do'."

Other than the parties' stipulations, all of the facts pertinent to the issue and answer can be found in Baker's testimony. From the facts and circumstances elicited from Baker we learn that: Scott had no equipment inspection contract with Rincon; Scott had neither employees nor equipment

on the site at the time of the explosion; Baker did make an on-site investigation from which he formed a conclusion that the explosion was not electrically caused; no fault by Scott was indicated on any of the occasions where Baker was questioned about what he saw at the accident scene.

From Baker's testimony the jury could reasonably infer that: Baker's investigation was reasonable under the circumstances; Scott's connection to the cause of the explosion was nil or at least remote; Scott had a reasonable belief of no liability for the explosion; therefore, notice to Employers by Scott when the claim was filed against Scott was notice as soon as practicable under the facts of this case. We hold that there was some probative evidence, sufficient evident, and evidence not against the great weight and preponderance of the evidence to sustain the jury's finding.

■ There is an additional reason the judgment of the trial court should be by us upheld. This reason concerns the *duty* of Scott to give notice to his insurance carrier upon the happening of an accident. Ordinarily, under Texas law, there exist four excuses which an insured like Scott could claim for his failure to give notice to the insurer until approximately thirteen months after the accident:

1. Insured's lack of knowledge of the accident.

2. Insured's belief that the accident was trivial and no claim would be made.

3. Insured's belief that he was not covered.

4. Insured's illness.

See 23 Baylor L.Rev. 419, 422 (1971) and cases therein cited. These four tests, however, are all based on the premise that an insured first had the duty to give notice, but for one of the four excuses has failed to do so during the stated period of time after the accident. This premise, duty to give notice, does not exist where certain facts of non-involvement or non-participation exist on the part of the insured in connection with the accident. So Scott's delay in giving notice falls within a different test.

In United States Casualty Company v. Reese, 229 F.Supp. 24 (E.D.Tex.1964) a fact situation existed similar to that of the present case. Reese, a contractor, had performed work for Texas Pulp Paper Company in servicing connecting pipes and fixtures in relation to existing boilers on the manufacturer's premises. Sometime after the completion of the work by Reese, one of the manufacturer's boilers exploded causing the death and injury of several employees of the manufacturing company. Upon hearing of the accident, Reese immediately acquainted himself with all the facts surrounding the explosion and checked the work he had previously done. After that inspection, it appeared to him that his work had neither caused nor contributed in any way to the explosion of the boiler. Thus, Reese believed that no claim could be made against him for death and injuries resulting from the explosion. Nevertheless, the legal representatives of one of the deceased workers brought suit against Reese. The court concluded that Reese was under no duty to report the explosion to his insurer until a claim had been made against him.

■ All of the cases and authorities cited by the appellant fall within the category that should be decided in accordance with one of the four general excuses. Appellant's authorities all involve an insured's premises, instrumentality, or employee that is directly connected with the accident; thus, there is created at the outset the duty to notify the insurance carrier as soon "as soon as practicable". In the Reese case and the present case, however, no premises, no instrumentality, and no employees of the insured were directly or indirectly involved in the accident; thus, the duty to give notice is precluded from arising. Here, Scott could reasonably believe that it

was not liable because there was no connection, or only a remote connection, to the accident.

The appellant directs suspicion to the electrical use of blowers at the time of the explosion. There was no evidence, however, that the blowers which Scott had repaired previously were the cause of the explosion. Scott, during the past four months, had done only 6½ hours of electrical repair work at the accident site before the accident. Scott had not performed all Rincon's electrical work; some of the electrical work had been done by Rincon. There was no evidence that the explosion was a result of Scott's electrical repair work. None of Scott's employees were present immediately before, during, or after the accident. Scott had no property or equipment that was being used or that was on the accident site. Scott did not exercise any control over the operations being performed.

We hold that an insured, after an investigation, is not required to give his insurer any notice until he has been made aware of the fact that a claim was likely to be made against him as a result of an accident under these conditions: where that insured had no reasonable grounds to believe that there was any act or omission by him or his employees or any instrumentality owned by him that was being used directly or indirectly by any of his employees, or by any of his assignees, that was the cause of an injury that was later set forth in an action brought by an injured party against the insured. Williams v. Cass-Crow Wing Co-op. Ass'n, 224 Minn. 275, 28 N.W.2d 646 (1947); Accord, Frederick v. John Wood Co., 263 Minn. 101, 116 N.W.2d 88 (1962); 44 Am.Jur.2d, Insurance § 1474; Long, The Law of Liability Insurance, § 13.12 (1973). Because of the facts here present, Scott could reasonably conclude that it had no liability. Therefore, Scott's duty to give its insurer notice did not arise until Scott itself was given actual notice of a claim. Appellant's first four points are overruled.

Next, the appellant, in its final (fifth) point complains of the trial court's action of refusing appellant's request to use a Q & A statement of Baker as an admission against interest and to impeach Baker.

As we noted above, a Federal district court suit was filed against Scott November 4, 1969. The next day Scott was served with citation in that suit. On November 7, 1969, Scott delivered the citation to Employers. On the same day Employers, by its district claims manager, secured a non-waiver agreement from Scott; called an attorney, Mr. Till, in Houston to come to Corpus Christi to take some Q & A statements; told Mr. Till of the delay by Scott in reporting the case. According to Baker, a Mr. Wood of Employers told Baker that Mr. Till wanted to ask him some questions and that "He's going to be our lawyer."

On November 8, 1969, Mr. Till took a Q & A statement from Baker in the Employers' Corpus Christi office. That Q & A statement is the subject of this point.

Baker testified, at the trial on Employers' Bill of Exceptions, that when he went to Employers' office, he knew that Employers was supposed to provide an attorney for Scott and he thought, based on Employers' representation, that Mr. Till was that attorney. Further, he said that had he known that Mr. Till was not Scott's attorney he would not have given him the Q & A statement. No one told him that Mr. Till was not Scott's attorney; that Employers could possibly use the Q & A statement against Scott to deny coverage; that Baker should have an attorney with him in that matters adverse to Scott would be subject to questions in the Q & A statement.

On November 24, 1969, Scott received a letter from Mr. Till's law firm informing Scott that Employers was denying coverage and would not defend Scott in the Federal court case.

The recent Supreme Court case of Employers Casualty Company v. Tilley, 496

S.W.2d 552 (Tex.Sup.1973) controls the disposition of this point. The facts in *Tilley* and the case at bar are strikingly similar. In *Tilley,* Employers (the same insurance company now opposing Scott) furnished an attorney for the insured, Tilley, after securing a non-waiver agreement *from him.* The attorney took Q & A statements and, subsequently, Employers announced to Tilley that it was denying coverage because of late notice. A declaratory judgment suit, based on late notice, was filed and each party moved for a summary judgment. In this late notice case, Employers was defended by an attorney other than the one who took the Q & A statements (as in the Scott case). That attorney attempted to place into the summary judgment evidence Q & A statements (containing information adverse to the insured) taken while the insured believed that the attorney taking the statements was his attorney.

The Supreme Court, in *Tilley,* held that the use by the insurer of the adverse statements of the insured in the late notice case was untenable because Employers owed Tilley the responsibility to immediately notify him of the conflict (known to the insurer from outset) on the specific coverage question and thus allow the insured to protect himself. This responsibility is not relieved by a non-waiver agreement. The court's holding was predicated upon the attorney's conflict of interest between the insured and the insurer.

We hold that the trial court's refusal to permit introduction into evidence of Baker's Q & A statement was not error because that statement was taken while Baker had a reasonable belief (induced by Employers) that the attorney (employed by Employers) taking the statement was Scott's attorney. Appellant's final point is overruled.

The judgment of the trial court is affirmed.