GREAT AMERICAN INSURANCE COMPANY v. C. G. TATE CONSTRUCTION COMPANY

No. 9

(Filed 8 July 1981)

1. **Insurance § 96.1— notice to insurer of accident—unexcused delay—insurer's obligation to defend**

    An unexcused delay by the insured in giving notice to the insurer of an accident does not relieve the insurer of its obligation to defend and indemnify unless the delay operates materially to prejudice the insurer's ability to investigate and defend.

2. **Insurance § 96.1— notice to insurer of accident—timeliness—test of insurer's obligation to defend**

    When faced with a claim that notice of an accident was not timely given to an insurer, the trier of fact must determine: (1) whether the notice was given as soon as possible; (2) if not, whether the insured has shown that he acted in good faith, e.g., that he had no actual knowledge that a claim might be filed against him; and (3) whether the insurer's ability to investigate and defend was materially prejudiced by the delay.

    Justice MEYER dissenting.

ON discretionary review of the decision of the Court of Appeals reported at 46 N.C. App. 427, 265 S.E. 2d 467 (1980), reversing and remanding the judgment of *Bailey, Judge,* entered 17 May 1979 in Superior Court, WAKE County.

The primary question on this appeal is whether failure of an insured to comply with a provision in an insurance policy which requires him, as a condition precedent to coverage, to give the insurer notice of an accident "as soon as practicable," of itself, relieves the insurer of its obligations under the policy.

*Johnson, Patterson, Dilthey & Clay, by Robert M. Clay, Robert W. Sumner and Sanford W. Thompson IV, for plaintiff-appellant.*

*Nye, Mitchell, Jarvis & Bugg, by Charles B. Nye, for defendant-appellee.*

CARLTON, Justice.

### I.

Appellant, Great American Insurance Company (Great American), brought this declaratory judgment action to determine its obligations under a liability insurance contract with the defendant-appellee. This dispute arose out of an automobile accident the facts of which are bitterly disputed. This much is certain: On 6 April 1976 defendant C. G. Tate Construction Company (Tate) was engaged in a highway project on U.S. Highway 221 north of Spartanburg, South Carolina. Tate's job was to widen the existing two-lane road to four lanes. The job required the use of numerous pieces of heavy equipment to grade the shoulders, to fill in low spots and to haul away excess dirt. At about three o'clock that afternoon a gasoline tanker owned by State Petroleum, Inc., and driven by Robert Allen Thomas collided with a car driven by Norma Jean Pegg. Shortly after the collision the gasoline in the tanker caught fire and exploded. Both drivers escaped before the explosion and, although seriously injured, survived the accident.

The controversy concerning the accident centers around its cause and the directions in which the vehicles were traveling. Pegg, Thomas and another motorist who witnessed the accident claim that Pegg was traveling south and Thomas north when Tate's front-end loader backed out onto the road in the northbound lane causing Thomas to swerve to the left and collide head-on with Pegg's car. Several Tate employees and an eyewitness who viewed the accident from her patio testified that both vehicles were traveling north, that the car slowed or stopped, and that the tanker braked sharply, jackknifed and rolled over the car. According to these witnesses, the front-end loader was parked about ten feet from the edge of the highway and was not involved in the accident.

Officers of Tate testified that they did not notify Great American, its liability carrier, of the accident because its employees who saw the accident said that Tate was not involved. The local news media, however, ran stories attributing fault to Tate, and the investigating policeman testified that on the evening of the accident he told Tate foreman A. G. Foster that Pegg's version of the accident differed considerably from the version given by Tate employees and that she claimed that a piece of Tate's equipment backed into the road causing the tanker to swerve and collide head-on with her car. Foster denied that he had been informed of Pegg's claims but admitted that he knew that the local news media had assigned fault to Tate.

Tate never reported the accident to Great American. Great American did not learn of Tate's potential involvement in the accident until 3 May 1978, some twenty-seven days after it occurred, by way of a letter from Space Petroleum Company, Thomas' employer, and by way of a telephone call from Thomas' lawyer. Great American is the workers' compensation carrier for Space Petroleum and the 3 May 1978 communications involved a workers' compensation claim for injuries sustained by Thomas in the accident.

Plaintiff Great American initiated this action for declaratory relief seeking a judgment that it has no obligation to defend or indemnify Tate in any suit arising out of this accident because Tate failed to notify Great American of the incident "as soon as practicable." In its answer Tate alleged that it did not notify the plaintiff of the accident because all the information received by its officers and directors indicated that Tate was not involved and that it knew of no potential involvement until contacted by the plaintiff.

The matter was heard on depositions and live testimony in the Superior Court, Wake County by Judge Bailey who sat without a jury. At the conclusion of the evidence Judge Bailey found, *inter alia*, that Tate knew or should have known of its potential involvement in the accident shortly after it occurred and that its failure to notify the plaintiff was unjustified. Based on his findings of fact Judge Bailey concluded that:

> Defendant's unjustified and inexcusable failure to give plaintiff notice of the accident on April 6, 1978 "as soon as

practicable" constituted a violation of a condition precedent to coverage under plaintiff's policy of insurance, and, as such, releases plaintiff from its obligation under the policy for the accident on April 6, 1978.

On appeal, the Court of Appeals reversed and held that in order to escape its duty to defend and indemnify an insurer must show not only unjustified delay in giving notice but also that it suffered prejudice because of the delay. Because no findings had been made on the issue of prejudice, the Court of Appeals remanded the case to the trial court for consideration of that issue.

We denied plaintiff's original petition for discretionary review on 15 August 1980. However, on 4 November 1980 we allowed plaintiff's petition for reconsideration and granted discretionary review.

## II.

### A.

[1]   The sole issue with which we are confronted on this appeal is the effect to be given the provision in the policy insuring defendant requiring that written notice be given the insurer "as soon as practicable." More precisely, we must decide whether to continue to apply traditional contract principles and hold that failure to comply strictly with this condition precedent releases the insurer from its obligation to defend and indemnify or to reject the traditional approach and embrace the modern view that this provision, although denominated by the policy as a condition precedent, should be construed in accord with its purpose and with the reasonable expectations of the parties. For the reasons discussed below we adopt the modern view and construe this provision according to the reasonable expectations of the parties. Accordingly, we hold that an unexcused delay by the insured in giving notice to the insurer of an accident does not relieve the insurer of its obligation to defend and indemnify unless the delay operates materially to prejudice the insurer's ability to investigate and defend.

In its briefs and arguments before both appellate courts, plaintiff correctly argued that prior decisions of this Court dictate a contrary result. Notice provisions in a liability insurance con-

Insurance Co. v. Construction Co.

tract were first considered by this court in *Peeler v. United States Casualty Co.*, 197 N.C. 286, 148 S.E. 261 (1929). In *Peeler* plaintiff sought satisfaction of a judgment rendered against defendant's insured by claiming a right to enforce the insured's policy with defendant as a third party beneficiary. The policy in question required that notice of an accident be given to the insurer "as soon as practicable." Defendant-insurer did not receive notice of the accident until after the trial of Peeler's action against its insured had begun, approximately a year-and-a-half after the accident. Although there was no provision in the policy which made the notice provision a condition precedent, this Court held that the notification provision was of the essence of the contract and, thus, a condition precedent to coverage. Therefore, we held that plaintiff's claim was barred as a matter of contract law.

We again employed the strict contractual approach to construction of notice provisions in *Muncie v. Travelers Insurance Co.*, 253 N.C. 74, 116 S.E. 2d 474 (1960). The facts in *Muncie* were similar to those in *Peeler*. The plaintiff in *Muncie* was involved in an automobile accident with defendant's insured against whom she secured judgment. She sued the defendant-insurer to satisfy her judgment against its insured. The insurer did not receive notice from its insured until some eight months after the accident and plaintiff offered no evidence which explained or justified the delay. This Court held that the trial judge erred in instructing the jury that the burden of proof was on the insurer to show that notice had not been given within a reasonable time and that it was prejudiced by failure to give timely notice. In so holding, we employed the traditional contract analysis: Freedom of contract is constitutionally guaranteed and provisions in private contracts, unless contrary to public policy or prohibited by statute, must be enforced as written. Because the policy makes the giving of notice a condition precedent, the party seeking to enforce the contract has, under general common law contract principles, the burden of pleading and proving strict compliance. Since notice was given eight months after the accident and plaintiff presented no evidence to justify or explain the delay, notice was not given "as soon as practicable" *as a matter of law:*

> Notice without explanation for the delay, given eight months after the happening of the accident, resulting in injuries as serious as depicted by plaintiff's judgment against

Crosby, cannot be said to be given "as soon as practicable." Since plaintiff has failed to establish compliance with the conditions or to justify the delay, it follows that she has failed to establish her right to maintain the action.

*Id.* at 81, 116 S.E. 2d at 479.

On the basis of this language the Court of Appeals distinguished *Muncie* as applying only when no explanation for the delay was given. Limiting *Muncie* strictly to its facts paved the way for the Court of Appeals to adopt a new rule for cases in which some explanation was offered. We cannot agree with that court's reasoning. The reasoning in *Muncie*, summarized above, allows no consideration of prejudice. The language relied on by the Court of Appeals merely amounts to a statement of when the question of timely notice becomes one of law properly decided by the court. *See First Citizens Bank & Trust Co. v. Northwestern Insurance Co.*, 44 N.C. App. 414, 261 S.E. 2d 242 (1980). *Muncie* squarely stands for the proposition that strict contract law applies to the interpretation of insurance policies.

We reaffirmed our adherence to the strict contractual approach enunciated by *Peeler* and *Muncie* in *Fleming v. Nationwide Mutual Insurance Co.*, 261 N.C. 303, 134 S.E. 2d 614 (1964). In an opinion by Justice Moore, this Court stated:

No part of the insurance contract may be ignored. The giving of notice is a condition precedent to insurer's liability. The burden of proof is upon plaintiff to show that notice was given as soon as practicable. . . . "Notice without explanation for the delay, given eight months after the happening of the accident, resulting in injuries . . . , cannot be said to be given 'as soon as practicable.' Since plaintiff has failed to establish compliance with the condition or to justify the delay, it follows that she has failed to establish her right to maintain the action."

*Id.* at 306, 134 S.E. 2d at 616 (quoting *Muncie v. Travelers Insurance Company*, 253 N.C. at 81, 116 S.E. 2d at 479).

This line of cases reflects the traditional reasoning applied by courts in construing insurance contracts: Parties have freedom to contract and, absent a violation of law or public policy, courts will enforce those contracts as written. If the insurance contract

Insurance Co. v. Construction Co.

makes notice a condition precedent to recovery or if notice is of the "essence" of the contract, the party seeking to enforce the contract has the burden of pleading and proving strict compliance with the notification requirement. Although this Court, on occasion, has been more liberal in its decisions as to whether the notice was given "as soon as practicable,"[1] we have never departed from the strict contractual approach.[2] Clearly, under *Peeler, Muncie* and *Fleming* failure to give timely notice, of itself, defeated plaintiffs' attempt to enforce the policy without regard to whether the delay materially prejudiced the insurer's ability to defend the claim.

1. A delay in giving notice because of physical or mental incapacity has been held not to violate the requirement that notice be given "as soon as practicable." *E.g., Rhyne v. Jefferson Standard Life Ins. Company,* 196 N.C. 717, 147 S.E. 6 (1929). A delay due to inability to discern any injury has also been held to be excusable. *Ball v. Employers' Assur. Corp.,* 206 N.C. 90, 172 S.E. 878 (1934).

2. We have, however departed from the strict contractual approach when construing cooperation clauses in insurance contracts and have held that, in order to relieve an insurer of its obligations, the failure to cooperate must be both material and prejudicial. *Henderson v. Rochester American Insurance Co.,* 254 N.C. 329, 118 S.E. 2d 885 (1961). The following language from *Henderson* is, perhaps, a harbinger of the holding in this case:

> The provisions of liability insurance policies imposing as conditions to liability the duty of insured to give notice of accidents and cooperation in the defense of actions which might result in a judgment against insured are, except where otherwise provided by statute, binding on the parties. Properly interpreted, they will be enforced. *Muncie v. Insurance Co.,* 252 N.C. 74; *Peeler v. Casualty Co.,* 197 N.C. 286, 148 S.E. 261.

> The provisions are to be given a reasonable interpretation to accomplish the purpose intended, that is, to put insurer on notice and afford it an opportunity to make such investigation as it may deem necessary to properly defend or settle claims which may be asserted, and to cooperate fairly and honestly with insurer in the defense of any action which may be brought against insured, and upon compliance with these provisions to protect and indemnify within the policy limits the insured from the result of his negligent acts. An insurer will not be relieved of its obligation because of an immaterial or mere technical failure to comply with the policy provisions. The failure must be material and prejudicial. *Ball v. Assurance Corp.,* 206 N.C. 90, 172 S.E. 878; *Mewborn v. Assurance Corporation,* 198 N.C. 156, 150 S.E. 887; *Hunt v. Fidelity Co.,* 174 N.C. 397, 93 S.E. 900; *MacClure v. Casualty Co.,* 229 N.C. 305, 49 S.E. 2d 742, where it is said: "While there is some contrary authority, the better reasoned cases hold that the failure to co-operate in any instance alleged must be attended by prejudice to the insurer in conducting the defense. Blashfield, Automobile Law, Vol. 6, sec. 4059, p. 78."

*Id.* at 332, 118 S.E. 2d at 887.

The holdings of these cases were in accord with the then-prevailing majority view. Recently, however, many courts have rejected the strict contractual approach and interpreted notice conditions in insurance contracts in accord with the reasonable expectations of the parties. *E.g., State Farm Mutual Automobile Insurance Co. v. Milam,* 438 F. Supp. 227 (S.D.W. Va. 1977); *Johnson Controls, Inc. v. Bowes,* 1980 Mass. Adv. Sh. 1831, 409 N.E. 2d 185 (1980); *Cooper v. Government Employees Insurance Co.,* 51 N.J. 86, 237 A. 2d 870 (1968); *Brakeman v. Potomac Insurance Co.,* 472 Pa. 66, 371 A. 2d 193 (1977); *Pickering v. American Employers Insurance Co.,* 109 R.I. 143, 282 A. 2d 584 (1971). For a discussion of this developing trend and the Court of Appeals' opinion in this case see Note, 17 Wake Forest L. Rev. 141 (1981). Under this theory, the question becomes whether the insurer has been prejudiced by the delay in receiving notice. The reasons for the trend away from the application of strict contract law to insurance cases were aptly stated by the Supreme Court of Pennsylvania:

> The rationale underlying the strict contractual approach reflected in our past decisions is that courts should not presume to interfere with the freedom of private contracts and redraft insurance policy provisions where the intent of the parties is expressed by clear and unambiguous language. We are of the opinion, however, that this argument, based on the view that insurance policies are private contracts in the traditional sense, is no longer persuasive. Such a position fails to recognize the true nature of the relationship between insurance companies and their insureds. An insurance contract is not a negotiated agreement; rather its conditions are by and large dictated by the insurance company to the insured. The only aspect of this contract over which the insured can "bargain" is the monetary amount of coverage.

*Brakeman v. Potomac Insurance Company,* 472 Pa. at 72, 371 A. 2d at 196. The New Jersey Supreme Court gave its reasons for rejecting the strict contractual approach thusly:

> [W]e have recognized that the terms of an insurance policy are not talked out or bargained for as in the case of contracts generally, that the insured is chargeable with its terms because of a business utility rather than because he read or

understood them, and hence an insurance contract should be read to accord with the reasonable expectations of the purchaser so far as its language will permit. And although the policy may speak of the notice provision in terms of "condition precedent," . . . nonetheless what is involved is a forfeiture, for the carrier seeks, on account of a breach of that provision, to deny the insured the very thing paid for. This is not to belittle the need for notice of an accident, but rather to put the subject in perspective. Thus viewed, it becomes unreasonable to read the provision unrealistically or to find that the carrier may forfeit the coverage, even though there is no likelihood that it was prejudiced by the breach. To do so would be unfair to insureds. It would also disserve the public interest, for insurance is an instrument of a social policy that the victims of negligence be compensated. To that end companies are franchised to sell coverage. We should therefore be mindful also of the victims of accidental events in deciding whether a forfeiture should be upheld.

*Cooper v. Government Employees Insurance Co.*, 51 N.J. at 93-94, 237 A. 2d at 873-74 (citations omitted).

We agree with both statements. The terms of an insurance contract are not bargained for in the traditional sense. Insurance policies are offered on a take-it-or-leave-it basis and, frequently, the only term over which the insured has any say is the amount of coverage. Strict interpretation of the notice requirement leads to harsh results: failure to notify the insurer within a reasonable time, for whatever reason, relieves the insurer of its obligations to defend and indemnify, the essence of the contract, even though it may have suffered no prejudice whatsoever as a result of the delay. Rejection of the strict contractual approach means that the interpretation of the notice provision will be guided more by its purpose — the reason for its inclusion in the insurance contract — than by its seemingly conclusive terms. Additionally, adoption of the modern rule of reasonable expectations promotes the social function of insurance coverage: providing compensation for injuries sustained by innocent members of the public. The rule we adopt today has the advantages of promoting social policy and fulfilling the reasonable expectations of the purchaser while fully protecting the ability of the insurer to protect its own interests. While under the new reasonable expectation rule the number of

claims insurers will be obligated to defend may rise, this is no justification for continued application of the rule we now reject. Our decision merely tells insurers that they are obligated to defend when the delay in receiving notice has not prejudiced their ability to investigate or otherwise defend the claim, an obligation which, in the reasonable expectation of the purchaser, should exist. Because it takes prejudice into account, the new rule does not affect the *ability* of the insurer to investigate and defend. Thus, the *risk* undertaken by the insurer remains unchanged. Accordingly, we hereby overrule the *Peeler-Muncie-Fleming* line of cases and hold that failure of an insured to notify its insurer of an accident "as soon as practicable" does not relieve the insurer of its obligations under the contract unless the delay operates materially to prejudice the ability of the insurer to investigate and defend.

The rule we adopt today places the notice requirement in its proper context. No condition of timely notice will be given a greater scope than required to fulfill its purpose. Simply put, the scope of the condition precedent which will relieve an insurer of its obligations under an insurance contract, is only as broad as its purpose: to protect the ability of the insurer to defend by preserving its ability fully to investigate the accident, *e.g., Peeler v. United States Casualty Co.*, 197 N.C. 286, 148 S.E. 261. If, under the circumstances of a particular case, the purpose behind the requirement has been met, the insurer will not be relieved of its obligations. If, on the other hand, the purpose of protecting the insurer's ability to defend has been frustrated, the insurer has no duty under the contract. This equitable approach to the interpretation of notice requirements in insurance contracts has the advantages of providing coverage whenever in the reasonable expectations of the parties it should exist and of protecting the insurer whenever failure strictly to comply with a condition has resulted in material prejudice.

Unquestionably, the requirement that a liability insurer be given notice of a relevant event "as soon as practicable" is an essential part of the insurance contract. Without it, the insurer would be required to defend claims which it never had the opportunity adequately to investigate. It was the importance of the notice requirement that led to the adoption of a strict contractual approach:

In insurance of this character it is a matter of first importance to the insurer, who may be forced to become the real defendant in a lawsuit against the insured . . . , to be speedily informed of all the facts and witnesses concerning a possible litigation. In a very little time the facts may in a great measure fade out of memory, or become distorted, witnesses may go beyond reach, physical conditions may change, and, more dangerous than all, fraud and cupidity may have had opportunity to perfect their work. Therefore this stipulation is vital to the contract . . . .

*Travelers' Insurance Co. v. Myers,* 62 Ohio St. 529, 539, 57 N.E. 458, 459 (1900), *overruled on other grounds, Employers' Liability Assur. Corp. v. Roehm,* 99 Ohio St. 343, 124 N.E. 223 (1919), *quoted in Peeler v. United States Casualty Company,* 197 N.C. at 290, 148 S.E. at 263. The clear purpose of the notice provision is to protect the ability of the insurer to prepare a viable defense by preserving its ability fully to investigate the accident. It follows, then, that if the delay in giving notice has not materially prejudiced the ability of the insurer to defend the claim, its obligations under the insurance contract should not be excused.

### B.

There remains the question of which party should have the burden of proof on the issue of prejudice. The authorities are split on this issue. Some hold that because the insured is seeking relief from the literal meaning of the terms of the contract, he should bear the burden of showing that his delay has not materially prejudiced the insurer. *E.g., Hartford Accident & Indemnity Co. v. Lochmandy Buick Sales, Inc.,* 302 F. 2d 565 (7th Cir. 1962); *Dairyland Insurance Co. v. Cunningham,* 360 F. Supp. 139 (D. Colo. 1973). Other jurisdictions have reasoned that the burden of showing prejudice should be on the insurer because it is seeking to escape its obligation to defend and indemnify, the very thing which it is paid to do. *E.g., State Farm Mutual Automobile Insurance Co. v. Milam,* 438 F. Supp. 227; *Cooper v. Government Employees Insurance Co.,* 51 N.J. 86, 237 A. 2d 870. "[A]lthough the policy may speak in terms of 'condition precedent' . . . , nonetheless what is involved is a forfeiture, for the carrier seeks, on account of a breach of that provision, to deny the insured the very thing paid for." *Id.* at 93-94, 237 A. 2d at 873.

Insurance Co. v. Construction Co.

We believe the sounder rule to be that requiring the insurer to prove that it has been materially prejudiced by the delay. If the insurer has the burden of proving prejudice, then when it receives a delayed notification the rule will encourage the insurer to make a prompt preliminary investigation of the claim to protect its interests. An investigation may reveal that the delay has materially prejudiced the insurer, and, in that event, the insurer may deny coverage and either wait for a suit against it or file suit for declaratory relief. If, on the other hand, the preliminary investigation reveals that the ability of the insurer to investigate and defend has not been materially prejudiced, the insurer, presumably, will proceed with the claim and the question of coverage will never reach the courts. Additionally, the insurer, because it is an expert in investigation of accidents, is in a much better position to know what factors are relevant to its ability to investigate and to recognize prejudice. An insured would be in a far less enviable position if he had the burden of showing an absence of prejudice. Indeed, the insured would be forced to prove a negative. Placing the burden of showing prejudice on the insurer encourages an adequate investigation by the qualified party at the earliest possible time. These factors lead us to conclude that the burden of proof on the issue of prejudice is properly placed on the insurer.

As the Court of Appeals indicated, among the relevant factors to be considered by a jury in deciding whether the insurer has been prejudiced are:

> the availability of witnesses to the accident; the ability to discover other information regarding the conditions of the locale where the accident occurred; any physical changes in the location of the accident during the period of the delay; the existence of official reports concerning the occurrence; the preparation and preservation of demonstrative and illustrative evidence, such as the vehicles involved in the occurrence, or photographs and diagrams of the scene; the ability of experts to reconstruct the scene and the occurrence; and so on.

46 N.C. App. at 437, 265 S.E. 2d at 473. Proof of existence of any of the above factors is not determinative; the insurer must also show that the changed circumstance materially impairs its ability

---
Insurance Co. v. Construction Co.
---

to investigate the claim or defend and, thus, to prepare a viable defense. Often, proof of the changed circumstance itself will give rise to an inference of prejudice; for example, proof of the unavailability of a sole independent eyewitness.

We do not intend the above list of factors to be exclusive. Circumstances which may cause prejudice to an insurer are as varied and as numerous as the circumstances surrounding automobile accidents. We merely intend the above list to be illustrative. A more complete discussion of prejudicial factors will have to wait a case-by-case development.

### C.

The rule which we adopt today amounts to a reversal of a long line of previous cases upon which insurers have justifiably relied. Lest this decision be perceived as encouraging dilatory tactics in the notification of the insurer and, thus, as being unfair to insurers, we also now impose the requirement that any period of delay beyond the limits of timeliness be shown *by the insured* to have been in good faith. Anyone who knows that he may be at fault or that others have claimed he is at fault and who purposefully and knowingly fails to notify ought not to recover even if no prejudice results. Equity dictates that a bad faith delay in notifying an insurer, even though no material prejudice results, should bar the insured from enforcing the policy. This requirement is in accord with the common law principle that implicit in every contract is the obligation of each party to act in good faith. 17 Am. Jur. 2d, Contracts § 256 (1964).

### D.

[2] The effect of this decision is to create a three-step test for determining whether the insurer is obliged to defend. When faced with a claim that notice was not timely given, the trier of fact must first decide whether the notice was given as soon as practicable. If not, the trier of fact must decide whether the insured has shown that he acted in good faith, *e.g.*, that he had no actual knowledge that a claim might be filed against him. If the good faith test is met the burden then shifts to the insurer to show that its ability to investigate and defend was materially prejudiced by the delay.

We agree with the result reached by the Court of Appeals albeit on a somewhat different basis. We also agree with that court that the case must be remanded for further proceedings because the trial court refused to consider the question of prejudice because, in its opinion, that question "does not arise." Although the record discloses that evidence relevant to the question of prejudice was before Judge Bailey, we deem that it would be unfair to Great American to remand for additional findings only. This case reverses well-established law upon which Great American has justifiably relied. Justice demands that it be given the opportunity to present its claim in light of the newly imposed requirements. Additionally, while Judge Bailey found that the delay was "unjustified," there is no finding concerning defendant's good faith. For these reasons, further proceedings are required to allow the parties to present additional evidence relevant to the issues of good faith and prejudice.

The decision of the Court of Appeals is modified and affirmed. This cause is remanded to that court with instructions to remand to the Superior Court, Wake County, for further proceedings not inconsistent with this opinion.

Modified and affirmed.

Justice MEYER dissenting.

I must respectfully dissent. First, I cannot agree with the result reached by the majority; and second, even if I agreed with that result, I am convinced it could have been reached by the application of law well established in this jurisdiction and certainly without the violence done to existing precedent by the majority opinion.

I.

It is well settled in this jurisdiction that a provision in a policy of liability insurance which requires the insured to give notice "as soon as practicable" is reasonable, valid and enforceable. *Muncie v. Insurance Company*, 253 N.C. 74, 116 S.E. 2d 474 (1960); *accord Waters v. American Automobile Insurance Company*, 363 F. 2d 684 (D.C. Cir. 1966); *Allstate Insurance Company v. Edwards*, 237 F. Supp. 195 (N.D. Ca. 1964); *Resseguie v.*

*American Mutual Liab. Ins. Co.*, 51 Wisc. 2d 92, 186 N.W. 2d 236 (1971).

For over half a century North Carolina has followed the rule that if under the policy of insurance the insured is required to give the insurer notice of an accident "as soon as practicable" and that requirement is made a condition precedent to coverage under the policy, then it is immaterial whether the insurer is prejudiced by the insured's failure to give such notice. The failure to give notice is a failure to comply with the notice requirement and constitutes a violation of a condition precedent to coverage. As a result, coverage is forfeited. *Fleming v. Nationwide Mutual Insurance Co.*, 261 N.C. 303, 134 S.E. 2d 614 (1964); *Muncie v. Travelers Insurance Company*, 253 N.C. 74, 116 S.E. 2d 474 (1960); *Peeler v. United States Casualty Co.*, 197 N.C. 286, 148 S.E. 2d 261 (1929). *See also Taylor v. Insurance Co.*, 35 N.C. App. 150, 240 S.E. 2d 497, *pet. for discret. rev. denied*, 294 N.C. 739, 244 S.E. 2d 156 (1978).

The most recent case applying North Carolina law was filed 14 August 1980, three months after the decision of the Court of Appeals in this case. In *Fortress Re, Inc. v. Jefferson Ins. Co.*, 628 F. 2d 860 (4th Cir. 1980), the Fourth Circuit affirmed Judge Dupree's lower court ruling, applying North Carolina law, that failure of the insured to comply with a contractual requirement of prompt notice resulted in a forfeiture of insurance coverage. I realize that Judge Dupree lacked the authority to overrule existing North Carolina cases as the majority has done here, but I point out that Judge Dupree and the Fourth Circuit Court of Appeals held that the insured's failure to comply with the notice provision resulted in forfeiture of coverage under the policy. Specifically rejected was the insured's contention that a showing of prejudice is required.

While there is indeed a modern trend to the contrary, I believe this continues to be the majority rule in this nation:

The rule established by the weight of authority is that where, by the terms of the insurance contract, a specific notice of accident, given by or on behalf of the insured to the insurer, is made a condition precedent to liability on the part of the latter, the failure to do so will release the insurer from

the obligations imposed by the contract, although no prejudice may have resulted.

. . . .

By reason of the overwhelming weight of authority of the courts of last resort within the United States, we are compelled to hold that on account of the respondent's failure to perform the condition precedent, stipulated in the policy as such, of giving notice of the suit and forwarding summons and complaint within a reasonable time, no action on his part lay against the company. *Lack* of prejudice, under the *terms of the policy*, was immaterial.

*State Farm Mut. Automobile Ins. Co. v. Cassinelli,* 216 P. 2d 606, 610-611, 616 (Nev. 1950), *quoting Houran v. Preferred Acc. Ins. Co. of New York,* 109 Vt. 258, 195 A. 253, 259 (1937) and citing numerous cases reaching a similar result.

As one commentator has noted:

The majority, however, have refused to abandon their disciplined approach to contract law. While there appears to be a trend towards a more liberal approach in favor of the insured, the plurality of courts still place great emphasis on the sanctity of the policy.

. . . .

The majority of courts favor adherence to this strict contractual obligation except where the terms of the policy are ambiguous or unemphatic.

Comment, *The Materiality of Prejudice to the Insurer as a Result of the Insured's Failure to Give Timely Notice,* 74 Dick. L. Rev. 260, 261, 262 (1970). *See* Annot., 18 A.L.R. 2d 443 (1951); 44 Am. Jur. 2d Insurance § 1455; Note, *Insurance — A New Approach for the Interpretation of Insurance Contracts,* 17 Wake Forest L. Rev. 141 (1981). *See also Ziman v. Employer's Insurance Co.,* 493 F. 2d 196 (2d Cir. 1974); *Sohm v. United States Fidelity & Guaranty Co.,* 352 F. 2d 65 (6th Cir. 1965); *National Surety Co. v. Dotson,* 270 F. 2d 460 (6th Cir. 1959); *Preferred Accident Insurance Co. of New York v. Castellano,* 148 F. 2d 761 (2d Cir. 1945); *Hartford Accident & Indemnity Co. v. Loyd,* 173 F. Supp. 7 (W.D. Ark. 1973);

*Maryland Casualty Co. v. Wilkerson,* 119 F. Supp. 383 (E.D. Va. 1953), *aff'd per curiam,* 210 F. 2d 245 (4th Cir. 1954); *Liberty Mutual Insurance Co. v. Bob Roberts & Co.,* 357 So. 2d 968 (Ala. 1978); *Bituminous Casualty Corp. v. J. B. Forrest & Sons, Inc.,* 133 Ga. App. 864, 212 S.E. 2d 497 (1975); *Viani v. Aetna Insurance Co.,* 95 Idaho 22, 501 P. 2d 706 (1972); *INA Insurance Co. of Illinois v. City of Chicago,* 62 Ill. App. 3d 80, 379 N.E. 2d 34 (1978); *Security Insurance Group v. Emery,* 272 A. 2d 736 (Me. 1971); *Rose v. Regan,* 344 Mass. 223, 181 N.E. 2d 796 (1962); *Gizzi v. State Farm Mutual Insurance Co.,* 56 App. Div. 2d 973, 393 N.Y.S. 2d 107 (1977); *Shelton v. Ray,* 570 S.W. 2d 419 (Tex. Civ. App. 1978).

I do not believe this case is the proper vehicle for so drastic a departure from our prior case law. The facts of the case simply do not justify it. This is a declaratory judgment action by which the plaintiff-insurance company seeks a judicial determination as to whether it must provide coverage to the defendant-contractor under a policy of insurance. I cannot agree with the majority that under the facts of this case the defendant may be entitled to coverage.

I cannot conclude from the record before me that Tate's failure to notify the plaintiff of the accident was either justified or excusable. This is not a case of a bent fender on the family car—this accident involved the head-on collision between a gasoline tanker and a passenger automobile in which the tanker exploded, causing very serious personal injuries to several people and substantial property damage. Tate's own bulldozer-type tractor was severely burned. On the very evening of the accident, within hours of the collision, the South Carolina patrolman who investigated the accident told Tate's job superintendent that both the driver of the car and the driver of the tanker stated that Tate's bulldozer-type tractor backed into the road and caused the collision. There were stories in the local news media attributing fault to Tate. These stories were known to the job superintendent. In view of the serious nature of the accident, the injuries and damage that grew out of it, and the magnitude of potential claims, it is inconceivable to me that any ordinary, prudent person would not or should not have known that claims might be filed against Tate and that the insurance carrier should be notified.

Judge Bailey, a very able and experienced trial judge, after hearing all of the evidence, found as fact that Tate knew, or

Insurance Co. v. Construction Co.

should have known, in the exercise of ordinary and reasonable prudence, that claims might be filed against it. Tate knew of its potential involvement in the accident shortly after it occurred. There was ample evidence to support that finding and the conclusion that Tate's failure to give notice as soon as practical was "unjustified and inexcusable." The majority does not contend otherwise. They tacitly acknowledge that under these circumstances, unless we change the law, precedent would dictate that we reverse the Court of Appeals and affirm the trial judge. The majority has voted to change the law of this State and today hold that Tate's "unjustified and inexcusable" delay does not relieve Great American of its obligation to defend and indemnify Tate unless the delay operates materially to prejudice Great American's ability to investigate and defend. This is not interpreting the law—it is making it—a process we would be well advised to leave to the legislature.

I am also concerned about several other aspects of the majority opinion.

After establishing the new rule that the delay in giving (and presumably here failure to give[1]) notice must materially prejudice the ability of the insurer to defend the claim, the majority then places the burden on the insurer to prove material prejudice. I contend that the burden should be upon the party attempting to excuse his failure to comply with the contract—the insured. Admittedly, it may be difficult for either party to satisfy the burden. It seems to me that common sense dictates that the insured will have more relevant facts within its knowledge concerning the accident than an untimely notified carrier. The insured's knowledge of the facts surrounding an accident would also necessarily be more timely. The insured would be in a far better position to meet that burden of proof. See Restatement (Second) of Contracts § 225 (1973). In my opinion, prejudice should be presumed with the burden being upon the insured to show that the insurer suffered no prejudice. I believe that to be the majority view in those courts which have elected to follow the modern trend. See 8 J. Appleman, Insurance Law and Practice § 4732 at 15-19 (1962) where this comment appears:

---

1. Even though in this case Tate never reported the accident, it is still a question of delay in the receipt of notice and the majority opinion is couched in terms of "delay."

Many courts have adopted the rule that it is unnecessary for the company to show that it was prejudiced by the neglect of the insured in order to assert this policy defense, it being frequently stated that prejudice is presumed under these circumstances. This does not mean that upon a showing of delay, alone, the insurer walks out of court free of potential claims. It means, rather, that prejudice being a difficult matter affirmatively to prove, it is not required to make such proof. Prejudice may be presumed, with the burden upon the one seeking to impose liability to show that no prejudice did, in fact, occur—for example, that a complete investigation was made by another insurer or by competent persons who turned over the results to the 'late notice' insurer.

A few courts, however, have adopted a so called rule of 'substantial prejudice' which requires that the insurer, in order to be relieved of liability, demonstrate that it was materially and substantially hampered in the making of its defense or in the discovery of facts by the lack of timely notice. *Since it is often impossible for the insurer to know what witnesses it would have found or what facts it could have ascertained had immediate notice been given and a prompt investigation made, it is submitted that this test is unworkable. The burden should be placed upon the one seeking to recover.* (Emphasis added.)

Nor can I agree with the majority that "the *risk* undertaken by the insurer remains unchanged" under the new rule. Such a conclusion ignores reality. Previously the insurer had no burden of showing prejudice. Under the new rule it has the added burden of proving that its ability to investigate and defend was materially prejudiced by the delay. This new burden creates a substantial additional risk of non-persuasion. Prior to this case, the insurer bore no such risk.

I agree with the majority that the polar star in interpreting notice provisions should be to interpret them "in accord with the reasonable expectations of the parties." Unlike the majority, however, I do not feel this to be an innovative idea. Nor do I find this idea an impediment to what I deem to be the proper resolution of this case. As this Court said over forty years ago, the intent of the contracting parties is assumed to be the fulfillment of

*both* parties' expectations: to guarantee the insurer the payment of premiums and *protection from fraud and imposition,* and to give the insured the protection and benefits for which it paid. *Woodell v. Aetna Life Ins. Co.,* 214 N.C. 496, 499, 199 S.E. 719, 721 (1938). In my opinion, the majority has not adequately considered the reasonable expectations of the insurer.

## II.

Now, assuming *arguendo* that the majority is correct that the carrier should not be relieved of its policy obligations under the particular facts of this case, I believe that result could and should be reached by a different route, thereby avoiding so radical a departure from precedent. In my view this case ought to be decided on the basis that the delay of twenty-seven days was excusable by reason of the fact that Tate's investigation revealed no involvement in the accident by its personnel or vehicles.

The majority acknowledges the latitude allowed by our previous decisions in excusing delays where there is good reason to do so. The record before us indicates that the dialogue between Tate and the insurance company began on the same day the carrier received notice of the accident by way of the Workers' Compensation claim of Thomas. The insurance company here received actual notice of the accident within twenty-seven days of its happening.

There are many cases from other jurisdictions to the effect that the insured may be excused for a delay or even failure to give notice where it appears that, acting as a reasonable, prudent person, he believed that he was not liable for the accident. *Hartford Accident and Indem. Co. v. Lochmandy Buick Sales,* 302 F. 2d 565 (7th Cir. 1962); *Standard Accident Ins. Co. v. Turgeon,* 140 F. 2d 94 (1st Cir. 1944); *Dunn v. Travelers Indemnity Co.,* 123 F. 2d 710 (5th Cir. 1941); *Young v. Travelers Ins. Co.,* 119 F. 2d 877 (5th Cir. 1941); *United States Casualty Company v. Reese,* 229 F. Supp. 24 (E.D. Tex. 1964); *Day v. Hartford Accident and Indemnity Company,* 223 F. Supp. 953 (N.D. Okla. 1963); *Hughey v. Aetna Casualty & Surety Company,* 30 F.R.D. 508 (Del. 1962); *Barnes v. Waco Scaffolding & Equip. Co.,* 589 P. 2d 505 (Colo. App. 1978); *H. H. Hall Construction Company v. Employer's Mut. Liability Ins. Co.,* 43 Ill. App. 2d 62, 193 N.E. 2d 51 (1963); *Leytem v. Firemen's Fund Indemnity Co.,* 249 Iowa 524, 85 N.W. 2d 921

---

(1957); *Frederick v. John Wood Company*, 263 Minn. 101, 116 N.W. 2d 88 (1962); *Williams v. Cass-Crow Wing Co-op. Ass'n*, 224 Minn. 275, 28 N.W. 2d 646 (1947); *Pawtucket Mutual Insurance Company v. Lebrecht*, 104 N.H. 465, 190 A. 2d 420 (1963); *Farm Bureau Mut. Automobile Ins. Co. v Manson*, 94 N.H. 389, 54 A. 2d 580 (1947); *Figueroa v. Puter*, 84 N.J. Super. 349, 202 A. 2d 195 (App. Div. 1964); *LoTempio v. Safeco Ins. Co. of America*, 71 App. Div. 2d 799, 419 N.Y.S. 2d 347 (1979); *Public Service Mut. Ins. Co. v. Levy*, 57 App. Div. 2d 794, 395 N.Y.S. 2d 1 (1977); *Utica Mut. Ins. Co. v. C.L. Haines Mfg. Co.*, 55 App. Div. 2d 834, 390 N.Y.S. 2d 320 (1976); *Marallo v. Aetna Casualty and Surety Company*, 148 N.Y.S. 2d 378 (S.Ct. 1955); *Munal Clinic v. Applegate*, 273 S.W. 2d 712 (Tenn. App. 1954); *Employers Casualty Company v. Scott Electric Co.*, 513 S.W. 2d 642 (Tex. Civ. App. 1974).

The facts of this case fit comfortably in the category of the cases in which the delay or failure to give the required notice was justified or excused, assuming as the majority has done that the record does not support Judge Bailey's conclusion that Tate's failure to give notice was unjustified and inexcusable.

## CONCLUSION

I compliment the majority opinion for its explanation of the "three-step test" for determining whether the insurer is obligated to defend. It will certainly be needed.

Lastly, even under the new rule adopted by the majority, I fail to see how remand for further proceedings is justified under the particular facts of this case. I question how, on remand, Tate's actions can be found to be "in good faith" in view of the fact that they have already been found to be "unjustified and inexcusable."

I vote to reverse the Court of Appeals and reinstate Judge Bailey's judgment in favor of the plaintiff.