B & H SUPPLY COMPANY, INC. v. INSURANCE COMPANY OF NORTH AMERICA

No. 8321SC208

(Filed 21 February 1984)

1. **Insurance § 142— embezzlement insurance—waiver of timely filing of proof of loss**

   Defendant insurer waived timely filing of a proof of loss as required by a policy insuring against employee theft or embezzlement where defendant insurer had given an independent agent authority to receive information from the insured about a loss and to furnish proof of loss forms to the insured; the insured notified the agent of the embezzlement and asked whether the insurer would agree for the insured to attempt to collect from the embezzler by continuing to employ him and deducting from his commissions; and a few days later the agent told the insured that such plan was all right with the insurer but to let him know if the effort failed.

2. **Insurance § 142— embezzlement insurance—set-offs**

   In an action to recover under a policy insuring against employee theft, defendant insurer was entitled to a set-off for an amount collected by the insured from an embezzler. However, where the embezzler gave the insured a third deed of trust on his house to secure a note for the embezzled amount, the insured purchased the house at a foreclosure sale under the first deed of trust, and the insured later sold the house at a profit, defendant insurer was not entitled to a set-off for the amount of the profit on the sale of the house.

3. **Insurance § 142— embezzlement insurance—discovery of embezzlements by employer—no recovery for further embezzlements**

   Provisions of an employee theft or embezzlement insurance policy excluding from coverage any employee who to the employer's knowledge has committed a dishonest act while in its employment and providing for cancellation of coverage as to any individual immediately upon the insured's discovery of any dishonest or fraudulent act by that individual barred the insured's recovery for an employee's second series of embezzlements after the first series of embezzlements had been discovered by the employer and the employer had agreed to continue to employ the embezzler so that he could pay back the embezzled amounts.

APPEAL by defendant and cross-appeal by plaintiff from *Wood, William Z., Judge.* Judgment entered 21 December 1982 in

Superior Court, FORSYTH County. Heard in the Court of Appeals 20 January 1984.

This is a civil action wherein the plaintiff seeks to recover on an insurance contract which covered *inter alia* employee theft and embezzlement. In March 1975, plaintiff and defendant entered into an insurance contract whereby the defendant agreed to protect plaintiff against losses occasioned by employee dishonesty. The policy contained the following pertinent provisions:

> Section 7. The coverage of Insurance Agreement 1A, 1B, or 1C shall not apply to any Employee from and after the time that the Insured or any partner or officer thereof not in collusion with such Employee shall have knowledge or information that such Employee has committed any fraudulent or dishonest act in the service of the Insured or otherwise, whether such act be committed before or after the date of employment by the Insured.

> . . . .

> Section 8. Upon knowledge or discovery of loss or of an occurrence which may give rise to a claim for loss, the Insured shall: (a) give notice thereof as soon as practicable to the Company or any of its authorized agents and, except under Insuring Agreements 1A, 1B, or 1C and V, also to the police if the loss is due to a violation of law; (b) file detailed proof of loss, duly sworn to, with the Company within four months after discovery of loss.

> Proof of loss under Insuring Agreement V shall include the instrument which is the basis of claim for such loss, or if it shall be impossible to file such instrument, the affidavit of the Insured or the Insured's bank of deposit setting forth the amount and cause of loss shall be accepted in lieu thereof.

> Upon the Company's request, the Insured shall submit to examination by the Company, subscribe the same, under oath if required, and produce for the Company's examination all pertinent records, all at such reasonable times and places as the Company shall designate, and shall cooperate with the Company in all matters pertaining to loss or claims with respect thereto.

No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of the Policy nor until ninety days after the required proofs of loss have been filed with the Company, nor at all unless commenced within two years from the date when the Insured discovers the loss. If any limitation of time for notice of loss or any legal proceeding herein contained is shorter than that permitted to be fixed by agreement under any statute controlling the construction of this Policy the shortest permissible statutory limitation of time shall govern and shall supersede the time limitation herein stated.

. . . .

Section 18. Insuring Agreement 1A, 1B or 1C shall be deemed canceled as to any Employee: (a) immediately upon discovery by the Insured, or by any partner or officer thereof not in collusion with such Employee, of any fraudulent or dishonest act on the part of such Employee; or (b) at noon, standard time as aforesaid, upon the effective date specified in a written notice mailed to the Insured. Such date shall be not less than fifteen days after the date of mailing. The mailing by the Company of notice as aforesaid to the Insured at the address shown in this Policy shall be sufficient proof of notice. Delivery of such written notice by the Company shall be equivalent to mailing.

. . . .

Section 22. Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Policy or estop the Company from asserting any right under the terms of this Policy nor shall the terms of this Policy be waived or changed, except by endorsement issued to form a part of this Policy signed by an officer of the Company.

. . . .

For several months prior to May 1979, plaintiff's employee Martin had been embezzling payments he had collected from various of plaintiff's customers. On 25 May 1979, Martin confessed to plaintiff's president that he had embezzled $9,486.57 and listed the

date and amount of each payment taken and the name of the customer that made it. On 29 May 1979, plaintiff, through its president Harrison, notified John J. Dillon of the loss; Dillon, not on the defendant's payroll, was an independent agent through whom plaintiff purchased the insurance and was the person to contact in the event of a loss or other problems involving the policy. Harrison told Dillon that he might be able to work out a way to collect from Martin, rather than the insurance company, by continuing to employ him and deducting from his commissions, and asked if that would be alright with the company. Dillon told Harrison he would check with the company and let him know. Two or three days later Dillon called Harrison and told him it was alright to try and collect from Martin, as discussed, but to let him know if the effort failed. Between then and November 1979, the plaintiff collected $2,786.57 from Martin; but in December 1979, Martin confessed to Harrison that he had embezzled an additional $5,485.22 since the repayment plan was put into effect. Plaintiff immediately terminated Martin's employment, and later discovered an additional embezzlement in the amount of $143.92. In negotiations with Martin plaintiff agreed not to initiate criminal charges against him. Martin gave plaintiff a note covering all the embezzlements and secured it to some extent by a third deed of trust on his house. During January and February 1980, $1,604.49 in salary and commissions earned by Martin but not paid were retained by plaintiff and credited to Martin's account.

On 18 January 1980, Harrison notified Dillon of the second series of embezzlements and asked that he notify the defendant, and Dillon thereafter supplied plaintiff with a proof of loss form. Defendant contends that was the first notice it had of any of the losses. On 26 February 1980, plaintiff filed a sworn proof of loss covering both series of embezzlements. On 1 April 1980, defendant refused to honor the claims. Its refusal to pay for the first embezzlements was based on Section 8 of the policy, requiring timely proof of loss. The basis for not paying the second loss was Section 7 of the policy, excluding from coverage employees known to be dishonest.

The embezzling employee soon got behind in the payments due under the first deed of trust on his house and the holder foreclosed. At the foreclosure sale plaintiff was the last and highest bidder in the amount of $28,000, which covered the

amounts due the holders of the first and second deeds of trust and the costs of foreclosure. A year later plaintiff sold the house for approximately $41,000.

Following the filing of the complaint, answer and response and after discovery was had, defendant filed a motion for summary judgment. This motion was denied by Judge Albright. Trial was before Judge Wood sitting without a jury. The court found facts consistent with those set out above, and based upon these facts reached the following conclusions of law:

(1) That the said John J. Dillon Insurance Agency was authorized by the defendant to receive claims of loss from insureds and there, therefore, the giving of notice by the plaintiff to the said John J. Dillon Insurance Agency of the original embezzlement of $9,486.57 constituted the giving of notice to the defendant;

(2) That the plaintiff gave notice of the original $9,486.57 embezzlement to the defendant as soon as practicable under the terms and provisions of Section 8 of the insured's policy;

(3) That the plaintiff's failure to file the official "Proof of Loss" with the defendant within four months after the discovery of the loss on the original embezzlement was in good faith as said failure was authorized by the John J. Dillon Insurance Agency at the time that the plaintiff notified the said John J. Dillon Insurance Agency of the original loss;

(4) That as the plaintiff's failure to file its official "Proof of Loss" within four months as required by Section 8 of the insurance policy was in good faith and as the defendant has failed to prove by the greater weight of the evidence that the defendant was prejudiced in any manner by said failure, the plaintiff is entitled to recover judgment against the defendant on the insurance contract of the parties on the original embezzlement of $9,486.57;

(5) That as Section 7 of the insurance policy of the parties provides specifically that ". . . coverage of [employee dishonesty] shall not apply to any Employee from and after the time that the Employee shall have knowledge or information that such Employee has committed any fraudulent or dishonest act in the service of the Insured or otherwise . . .",

[sic] the plaintiff is not entitled to recover a judgment against the defendant on the subsequent embezzlement of $5,485.22 as said subsequent embezzlement occurred after the plaintiff had knowledge of the original embezzlement;

(6) That as the credits listed on the official "Proof of Loss" occurred during the time that the employee, Billy Martin, was embezzling amounts in excess of said credits and amounts not covered by the insurance policy, the defendant is not entitled to said credits;

Based upon these conclusions of law the court entered judgment for the plaintiff for $9,486.57, the sum of the original embezzlements. Defendant appealed from this judgment and the order of Judge Albright denying its motion for summary judgment. Plaintiff cross-appealed from the court's ruling that the employee's second series of embezzlements was not covered by the policy.

*Morrow and Reavis, by John F. Morrow and Clifton R. Long, Jr., for plaintiff appellee/cross-appellant.*

*Petree, Stockton, Robinson, Vaughn, Glaze & Maready, by Dudley Humphrey and Leon E. Porter, Jr., for defendant appellant.*

PHILLIPS, Judge.

### Defendant's Appeal

[1] The primary question raised by defendant's appeal is whether the failure of the insured to comply with Section 8 of the insurance policy, which required plaintiff to file a sworn proof of loss within four months of the discovery of the loss, relieved the insurer of liability. The trial court's holding that it did not was based on the rule adopted by our Supreme Court in *Great American Insurance Co. v. C. G. Tate Construction Co.*, 303 N.C. 387, 279 S.E. 2d 769 (1981). In that case it was held that unexcused delay in notifying the insurer of a loss or claim does not relieve the company of its policy obligations if the delay does not materially prejudice the insurer and the insured acted in good faith. The trial court's ruling was well based, in our judgment, though, as our later discussion shows, plaintiff's delay in filing a

proof of loss was excused; for even if the delay had not been excused, it benefited rather than prejudiced defendant and the insured's good faith was clearly established.

Defendant nevertheless contends that *Great American v. Tate* has no application to this case because the policy involved there insured against liability while the policy here insured against embezzlement. The basis stated for adopting the rule there enunciated, and rejecting the strict breach of contract rule earlier followed, was that, unlike other contracts, the terms of insurance policies are not freely negotiated, but are mostly imposed by the companies; and the Court's declared purpose in adopting the rule was to prevent insurance companies from unjustly using harmless breaches of policy notice and filing terms as a basis for escaping their policy obligations. The Court did not limit this salutary rule to liability insurance cases, and no sound reason exists for doing so, in our opinion. Indeed, if anything, the rule is needed more in embezzlement insurance cases, where delay in filing proofs of loss is much less likely to harm insurers than it is in liability insurance cases, where the defenses of no negligence and contributory negligence often depend upon early investigation.

But the trial court's decision that plaintiff's failure to file timely proof of loss did not relieve defendant of liability was correct, we think, for another and stronger reason. Since long before *Great American v. Tate* our law has been that despite policy terms to the contrary insurance companies, through their agents and employees, can waive the timely filing of notice or proof of loss, and that when such waivers are made and insureds rely thereon, the companies are estopped to maintain otherwise. One of the better statements of this principle is in *Dibbrell v. Georgia Home Insurance Co.*, 110 N.C. 193, 209, 14 S.E. 783, 788 (1892), where it was said:

> The usual stipulation in a policy that no agent of the company is authorized to change its terms and conditions, and that they shall not be waived except in writing endorsed on the policy, does not apply to conditions to be performed after the loss is incurred. . . . Where . . . the insured is led by the conduct of an agent of the company . . . to believe that the

stipulations will not be insisted on . . . the condition is deemed waived without the endorsement on the policy.

This rule has been reiterated and followed in many cases since then, including *Brandon v. Nationwide Mutual Insurance Co.*, 301 N.C. 366, 271 S.E. 2d 380 (1980).

Defendant contends, however, that this principle does not apply to this case because Dillon was neither its employee nor agent, but operated and functioned as an independent agent. But nomenclature is not to be confused with reality; and the reality in this case, according to the evidence, was that Dillon was the company's only conduit for receiving information from plaintiff about a loss and for getting proof of loss forms to him and that he thus was the company's agent and representative for that purpose, which is all that now concerns us. The evidence was and the trial court found that this large corporation has no employees anywhere that insureds are instructed to contact in regard to losses or claims, and that the company authorized Dillon to process proofs of loss for the plaintiff and other insureds. This uncontested finding was warranted by events that both preceded and followed the loss in question. In the past plaintiff had not contacted the company directly about losses, but had dealt with Dillon, the so-called independent agent who sold and serviced the policy; and Dillon, in turn, informed the company, obtained a proof of loss form from it, submitted it to the policyholder, and upon it being completed, returned it to the company. A similar course was followed in regard to the losses involved in this case. When the first embezzlement was discovered the insured notified Dillon and asked if it would be alright if they tried to collect from the employee, rather than the company. Dillon told plaintiff he would check with the company and after doing so, according to the testimony, told plaintiff that the arrangement suggested suited the company, but to keep him informed. At that time Dillon neither furnished plaintiff a proof of loss form nor suggested the necessity of one; but he did furnish plaintiff a proof of loss form after the subsequent embezzlements were discovered and reported. These unrefuted facts caused the trial court to conclude, correctly, in our judgment, that defendant had received prompt notice of the loss. It necessarily follows from these findings and conclusions that the defendant also waived its right to insist upon a sworn to proof of loss under Section 8 of the policy.

To hold otherwise would permit insurers to avoid their obligations because of their own failings, an absurdity that the law cannot contribute to.

Having decided that the trial court correctly concluded that the insured's right to recover for the first loss was not barred by the absence of a timely proof of loss, we must next determine whether defendant is entitled to any set offs against the $9,486.57 that is otherwise due plaintiff. Defendant contends that it is entitled to three set offs, none of which were allowed by the trial court. But the first set off claimed, for the policy stated deductible in the amount of $250, cannot be considered on the merits, since an examination of the record reveals that appellant failed to properly preserve this exception for appeal. *See* Rule 10(a), North Carolina Rules of Appellate Procedure.

[2] The second set off defendant claims is the $4,391.06 that plaintiff collected from Martin after the first embezzlement was discovered and reported. These funds were received after the insurer, through its agent Dillon, waived a proof of loss for the purpose of allowing the insured an opportunity to collect the loss without filing a claim. This arrangement, it should be noted, was intended to benefit both parties, since if collection was made without resorting to the insurance coverage the cost of plaintiff's insurance thereafter would not be increased thereby, whereas if the insurer paid the loss it would be. Since the waiver cannot be separated from the collections it was given to facilitate, equity requires that the insurer's liability be credited accordingly and we so hold.

The third set off that defendant claims is the nearly $13,000 profit that the insured made from the transaction involving the embezzler's house. The insured received nothing, however, from the note and deed of trust it obtained from the embezzler; the profit at issue arose from the insured's venture in buying the Martin property at a public foreclosure sale and holding it for a year, which anybody else, including the defendant, could have done. We know of no legal theory under which defendant might be entitled to a profit so made, appellant cites no authority in support of its claim, and we therefore deny it.

Thus, though defendant is indebted to plaintiff in the sum of $9,486.57 because of the first embezzlement, it is entitled to set

B & H Supply Co. v. Insur. Co. of North America

off against that claim the sum of $4,391.06, and upon remand the judgment will be reduced by that amount and allow plaintiff to recover of the defendant the sum of $5,095.51.

### Plaintiff's Cross-Appeal

[3]  The sole question presented by plaintiff's cross-appeal is whether the court erred in concluding that plaintiff is barred from recovering for the second series of embezzlements by Martin. In our opinion the court's conclusion in this regard was correct. Section 7 of the policy excludes from coverage any employee that to the employer's knowledge had committed a dishonest act while in its employment; and Section 18 provides for cancellation of coverage as to any individual immediately upon the insured discovering any dishonest or fraudulent act by that individual. Since these provisions had not been eliminated from the policy by any amendments or endorsements executed during the interim, they necessarily remained in force unless they were waived by the acts of the local agent Dillon. First of all, no authority has been found for the proposition that under North Carolina law a local agent can waive substantive conditions of coverage such as employee dishonesty in an embezzlement policy—a different matter entirely from waiving things that are supposed to be done after an insured loss has already occurred. But even if the law authorized such waivers, the evidence fails to show that one was made. Thus, since coverage for the embezzling employee terminated before the second embezzlements occurred, the court correctly ruled that defendant is not liable for them.

As to defendant's appeal, judgment modified and remanded.

As to plaintiff's cross-appeal, judgment affirmed.

Judges WELLS and BRASWELL concur.