GREAT AMERICAN INSURANCE COMPANY v. C. G. TATE CONSTRUCTION
COMPANY

No. 8410SC743

(Filed 7 May 1985)

1. **Insurance § 96.1— delayed notice of accident—insurer's duty to defend—factors determining**

     There is a three-step test for determining whether an insurer is obligated to defend when the insurer claims that notice of the claim was not timely given. Where the court concluded that notice was not given as soon as practicable and that the failure to notify the insurer "lacked good faith," then there was no need to proceed to the third step and determine whether the insurer was prejudiced by the delay.

2. **Insurance § 96.1— notice of claim to insurer—timeliness—tests for bad faith**

     Where the insured did not notify the insurer of an accident, the trial court improperly substituted an objective test of good faith by allowing unreasonable or unfair dealings to constitute bad faith by the insured. Bad faith is to be measured by its objective standard, based upon actual knowledge and an intentional, *i.e.*, purposeful and knowing, failure to notify the insured.

     Judge WELLS concurring.

APPEAL by plaintiff from *Bailey, Judge*. Judgment entered 6 June 1984 in Superior Court, WAKE County. Heard in the Court of Appeals 8 March 1985.

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Robert W. Sumner, for plaintiff appellant.*

*Nye, Mitchell and Jarvis, by Charles B. Nye, for defendant appellee.*

BECTON, Judge.

I

Great American Insurance Company (Great American) instituted this declaratory judgment action to determine its liability

under a general liability insurance policy issued to C. G. Tate Construction Company (Tate) for damages arising out of an accident occurring on 6 April 1978. This action has already been the subject of two prior reported cases, both appearing as *Great American Insurance Company v. C. G. Tate Construction Company*, at 46 N.C. App. 427, 265 S.E. 2d 467 (1980) and 303 N.C. 387, 279 S.E. 2d 769 (1981).

The central issue involved in these extended proceedings is whether the failure of an insured to comply with a policy provision which requires the insured, as a condition precedent to coverage, to give the insurer notice "as soon as practicable," releases the insurer from its obligations under the policy. The trial court originally entered judgment in favor of Great American, after concluding that Tate failed to give notice to Great American "as soon as practicable" and that such failure was unjustified and inexcusable. Tate appealed to this Court, and we reversed, holding that an insured's failure to comply with a notice provision will not relieve the insurer from its duty to defend and indemnify unless the notice was not given within a reasonable time, and the insurer suffered prejudice from the delay. We remanded for a determination on the issue of prejudice.

The Supreme Court modified and affirmed the Court of Appeals' decision, holding that an unexcused delay by the insured in giving notice to the insurer of an accident does not relieve the insurer of its obligation to defend and indemnify unless the delay materially prejudices the insurer. The Supreme Court further held that the delay must be shown by the insured to have been made in good faith, and it also placed the burden of showing material prejudice on the insurer. The Supreme Court remanded the cause to superior court to allow the parties to present additional evidence on the issues of good faith and prejudice. Upon remand, a new judgment was entered in which the trial court concluded that Tate failed to notify Great American as soon as practicable, that such failure was not in good faith, and that Great American was not prejudiced by Tate's failure to give it timely notification. The trial court held that Great American is liable on the policy of insurance it issued to Tate. Great American has appealed, and Tate cross-appeals.

On this appeal, Great American contends that the trial court erred in reaching the issue of prejudice once it determined the insured's failure to give timely notice was in bad faith. On this issue, we agree with Great American. Tate argues that the trial court improperly used an objective, rather than a subjective, standard in determining good faith, and on this issue we agree with Tate. We therefore reverse, and remand this cause to superior court for entry of a new order consistent with this opinion.

## II

### Factual Background

Detailed renditions of the facts are set out in the two previously reported opinions, and we give only a brief summary here. On 6 April 1978, Tate was engaged in a construction project on U.S. Highway 221 in South Carolina. That afternoon, a collision occurred between a car operated by Norma Pegg and a tractor-tanker petroleum truck operated by Robert Thomas and owned by State Petroleum, Inc. Both drivers were seriously injured, although they managed to escape before the truck exploded and burst into flames. The heart of the legal controversy in this case derives from two completely divergent descriptions of the accident given by various witnesses. The operators of the vehicles and one other witness testified that the vehicles were travelling in opposite directions, and that the head-on collision occurred when the truck swerved to avoid hitting one of Tate's bulldozers, which had suddenly backed into the truck's lane of travel on the highway. Other witnesses, including several of Tate's employees, gave an entirely conflicting version. These witnesses testified that when Pegg stopped or slowed her car, the truck, which was travelling directly behind her, braked, jackknifed, and rolled over her car. According to these witnesses, at the time of the collision Tate's bulldozer was parked off the highway nearby, and was not directly involved in the accident. The bulldozer was, however, extensively damaged by the fire; both Tate's job site foreman, A. G. Foster, and Tate's general job superintendent testified to that effect.

Tate's position throughout these proceedings has been that it never reported the accident to Great American because it believed it was neither responsible for nor involved in the accident. Although the investigating police officer testified to a conversa-

tion he had with Foster the night of the accident, in which he informed Foster of the conflicting versions of the accident, Foster testified that he did not recall having this conversation. Foster does admit, however, that he was aware of media reports assigning blame to Tate.

Great American first learned of Tate's potential involvement in the accident on 3 May 1978, when it was contacted by both Thomas' attorney and Thomas' employer, Space Petroleum. Great American is also the workers' compensation carrier for Space Petroleum, and these communications involved a workers' compensation claim on Thomas' behalf. Great American then contacted Tate, which informed the insurer that it had not notified Great American because of its belief that Tate was not involved in the accident. Shortly thereafter, Great American instituted this declaratory judgment action.

III

[1] We agree with Great American that once the trial court concluded that Tate had not acted in good faith when it failed to notify Great American of the accident "as soon as practicable," it was error for the trial court to address and decide the issue of prejudice.

In its opinion, the Supreme Court abandoned the traditional contractual approach, by which an insured's failure to strictly comply with the condition precedent of a notice provision releases an insurer from its obligations to defend and indemnify. In its place, the Court adopted the modern view that such a notice provision, "although denominated by the policy as a condition precedent, should be construed in accord with its purpose and with the reasonable expectations of the parties." 303 N.C. at 390, 279 S.E. 2d at 771. The specific holding was that "an unexcused delay by the insured in giving notice to the insurer of an accident does not relieve the insurer of its obligation to defend and indemnify unless the delay operates materially to prejudice the insurer's ability to investigate and defend." *Id.* In order that its decision not result in insureds taking advantage of insurers by engaging in "dilatory tactics," the court imposed the additional requirement that "any period of delay beyond the limits of timeliness be shown *by the insured* to have been in good faith." *Id.* at 399, 279 S.E. 2d at 776.

The court concluded that the effect of its decision was to "create a three-step test for determining whether the insured is obliged to defend," particularizing the test as follows:

> When faced with a claim that notice was not timely given, the trier of fact must first decide whether the notice was given as soon as practicable. If not, the trier of fact must decide whether the insured has shown that he acted in good faith, *e.g.*, that he had no actual knowledge that a claim might be filed against him. If the good faith test is met the burden then shifts to the insurer to show that its ability to investigate and defend was materially prejudiced by the delay.

*Id.*

This passage shows that whether the trial court should proceed to the second and third steps in a given case is dependent on the answer given at the previous stage. The three-step test may be diagrammed thus:

Question 1: Was notice given as soon as practicable?

> a. If the answer is *yes*, the inquiry is ended, and the insurer is liable on the policy.

> b. If the answer is *no*, the trier of fact proceeds to question 2.

Question 2: Did the insured act in good faith?

> a. If the answer is *no*, the inquiry is ended, and the insurer is not liable on the policy.

> b. If the answer is *yes*, the trier of fact proceeds to question 3.

Question 3: Was the insurer materially prejudiced by the delay?

> a. If the answer is *yes*, the inquiry is ended, and the insurer is not liable on the policy.

> b. If the answer is *no*, the inquiry is ended, and the insurer is liable on the policy.

In its order, after making extensive findings of fact, the trial court articulated three questions as guidelines to making its conclusions of law:

1. Did C. G. Tate Construction Company, Inc., fail to comply with a condition precedent to coverage under the policy when it did not notify Great American Insurance Company as soon as practical [sic]?

2. Was C. G. Tate Construction Company, Inc., acting in good faith when it failed to comply with the condition precedent to coverage?

3. Was Great American Insurance Company prejudiced by Tate's failure to give notification of the accident as soon as practical [sic]?

Although these questions are framed substantially in accordance with the test enunciated by the Supreme Court, the trial court erred by answering all three questions.

The trial court answered the first question of the three-step test by concluding that notice was not given as soon as practicable. It then properly proceeded to the second step involving "good faith" and concluded that Tate's failure to notify Great American of the accident "lacked good faith." Clearly, this conclusion of bad faith should have ended the inquiry. There was no need to proceed to the third step of the analysis. When the insured is guilty of bad faith, whether the insurer is prejudiced by the delay is immaterial, and the insured is barred from enforcing the policy. The trial court, of course, must use the proper standard in deciding the good faith issue. We discuss the proper standard in IV, *infra*.

IV

[2]  Tate contends the trial court applied the wrong standard in determining whether Tate acted in good faith. We agree with Tate, and conclude that the error lay in the trial court's applying an objective standard, rather than the subjective standard mandated by the Supreme Court.

The Supreme Court held that once a delay in notification has been established, the insured has the burden of proving that such delay was in good faith, "that [the insured] had no actual knowl-

edge that a claim might be filed against [the insured]." 303 N.C. at 399, 279 S.E. 2d at 776. The Supreme Court articulated the specific test as follows:

> Anyone who knows that he may be at fault or that others have claimed he is at fault and who purposefully and knowingly fails to notify ought not to recover even if no prejudice results.

*Id.* This language makes it clear that bad faith is to be measured by a subjective standard, based upon actual knowledge, and an intentional, *i.e.*, purposeful and knowing, failure to notify by the insured. It does not establish an objective standard based upon the conduct of a reasonable person. Our conviction that bad faith is not to be exemplified by objectively "unjustified," unreasonable or unfair behavior is strengthened by the Supreme Court's statement that "while Judge Bailey found that the delay was 'unjustified,' there is no finding concerning defendant's good faith." 303 N.C. at 400, 279 S.E. 2d at 777. *See B & H Supply Co. v. Ins. Co. of North America,* 66 N.C. App. 580, 311 S.E. 2d 643 (1984) (trial court apparently applied a subjective measure in determining insured's good faith).

Returning to the facts *sub judice,* we find that the trial court erroneously applied an objective standard in determining that Tate did not act in good faith. As stated in the judgment:

> A bad motive or specific intent is not required. . . . [W]here two business entities deal at arms length, unreasonable or unfair dealings can amount to a lack of good faith. . . . [I]t is clear that [Tate's] failure to notify [Great American] of this accident as soon as practical [sic] lacked good faith.

Although we agree with the trial court insofar that bad faith in this context does not require that the insured possess a bad motive or a specific ill intent, *i.e.*, some equivalent of legal malice, nonetheless, the Supreme Court has indicated that the failure to notify must be purposeful and knowing. By allowing unreasonable or unfair dealings to constitute bad faith, the trial court improperly substituted an objective test of good faith.

V

Based on our conclusions that the trial court did not apply the proper standard in determining the good faith of Tate, the in-

sured, and also that the trial court erred in addressing the issue of prejudice to Great American once it had determined that Tate was guilty of bad faith, this cause must be remanded for further proceedings. On remand, the trial court is to apply the subjective standard for determining good faith as enunciated by the Supreme Court, and in addition, it shall only reach the question of prejudice upon a proper conclusion that the insured acted in good faith in its failure to timely notify the insurer.

Reversed and remanded.

Judges WELLS and WHICHARD concur.

Judge WELLS concurring.

While I concur in the result reached by the majority, I have a somewhat different view of the test established by our Supreme Court in its previous opinion in this case. It appears to me that the Supreme Court constructed a two-part good faith test, one part objective, the second subjective.

As to whether an insured knows, or reasonably should have known, that he was involved in an accident; or knew, or reasonably should have known, that a claim would or might be made against him is a reasonable man question, to be objectively determined.

As to whether an insured purposefully and knowingly fails to notify his insurance company of the accident, is a part of the good faith issue which should be determined upon a subjective standard.