**FORTRESS RE, INC., Penn Re, Inc., Calvert Fire Insurance Company, Appellees,**

**v.**

**CENTRAL NATIONAL INSURANCE COMPANY OF OMAHA, Appellant.**

**No. 84–1086.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 8, 1985.

Decided July 3, 1985.

R. Michael Strickland, Raleigh, N.C. (Joseph C. Moore, Jr., Randolph L. Worth, Young, Moore, Henderson & Alvis, P.A., Raleigh, N.C., on brief), for appellant.

H. Hugh Stevens, Jr., and William G. Pappas, Raleigh, N.C. (Sanford, Adams, McCullough & Beard, Raleigh, N.C., on brief), for appellees.

---

Before HALL and SNEEDEN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

Fortress Re, Inc., Penn Re, Inc., and Calvert Fire Insurance Co. (collectively referred to as Fortress) sued Central National Insurance Co. seeking a declaratory judgment that Fortress was not obligated to Central under a contract of facultative reinsurance issued by it to Central. Central counterclaimed for reimbursement. The district court granted Fortress's motion for summary judgment.* Because we find that genuine issues of material fact remain unresolved, we vacate the judgment and remand the case for further proceedings.

I

On January 8, 1975, Fortress issued a reinsurance certificate agreeing to reimburse one-half of Central's liability over $250,000 under Central's policy issued to a manufacturer of swimming pools. Central's policy had an upper limit of $1,000,-000. The reinsurance certificate provided that "[p]rompt notice shall be given to the Reinsurer by the Company of any occurrence or accident which appears likely to involve this reinsurance. . . . "

On September 25, 1978, Central received notice of an action filed for personal injuries sustained in a pool manufactured by Central's insured. Central appointed an investigator and local defense counsel. Counsel reported that the claim was serious and that any excess insurance carriers should be notified. Although Central's investigator recommended establishing a $100,000 reserve, the company reserved only $20,000. In March of 1980, after discovery had proceeded on the claim, the investigator recommended increasing the reserve to between $100,000 and $200,000. An increase to $100,000 was approved.

By April, 1980, defense counsel informed Central that the possible liability exposure was great and that the proposed defenses were insufficient. The reserve was increased to $200,000. Central's internal memoranda in November, 1980, and July, 1981, indicate that it may have been aware of the necessity of providing notice to the reinsurers. In August, 1981, the law of New Jersey applicable to the claim changed to eliminate the primary defense relied on by Central's insured. Central's agent recommended increasing the reserve to $500,-000, and the company approved. At this time, the claimant's attorneys were demanding $3,000,000.

By November, 1980, Central had an aggregate retained liability on the policy of approximately $200,000, representing other reserved and paid claims against the insured. Fortress contends that this plus the reserve on the pool claim was sufficient to invoke Central's obligation to give it proper notice.

On January 4, 1982, Central's agent discovered that the increased reserve had not been posted and that a clerical error had resulted in no notice to Fortress. This discovery occurred one week before a settlement conference and the trial. On January 6, 1982, three days before trial, Central telexed Fortress to provide notice of the claim and an invitation to participate in a settlement conference the next day.

Central also sent Fortress a detailed claim analysis. On January 6 Central received a telex from Fortress stating that Central's notice was not timely and that Fortress would file immediately for declaratory relief. Fortress's complaint was filed on January 8, 1982. On January 11, 1982, the claim against Central's insured was settled for $923,605.

Three issues are raised on appeal. First, whether North Carolina law applies. Second, whether the principles explained in *Great American Insurance Co. v. C.G. Tate Construction Co.*, 303 N.C. 387, 279

---

* The district court's opinion is reported as *Fortress Re, Inc. v. Central Nat'l Ins. Co.*, 595 F.Supp. 334 (E.D.N.C.1983).

S.E.2d 769 (1981) (*Tate I*), are applicable to a reinsurance contract. Third, whether summary judgment was appropriate.

## II

■ When sitting in a diversity action, the district court must apply the law of the forum, including its choice of law rules. *Klaxon Co. v. Stentor Mfg.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). For reasons adequately stated by the district court, North Carolina law applies. *See* 595 F.Supp. at 337.

## III

■ For many years, North Carolina followed the traditional contract rule that failure to comply strictly with a notice requirement was a failure to satisfy a condition precedent, releasing the insurer from its obligation to defend and indemnify. This rule has now been rejected. In *Great American Insurance Co. v. C.G. Tate Construction Co.*, 303 N.C. 387, 279 S.E.2d 769 (1981) (*Tate I*), the North Carolina Supreme Court expressly overruled its cases based on traditional contractual principles and held that the failure to give timely notice to the insurer does not relieve the insurer of its obligations unless the delay materially prejudices the insurer's ability to investigate and defend. 303 N.C. at 396, 279 S.E.2d at 774. The insured, however, must prove that its failure to give timely notice was in good faith. 303 N.C. at 399, 279 S.E.2d at 776. This new rule embraces the modern contract principle that although a notice requirement may be denominated a condition precedent, it "should be construed in accord with its purpose and with the reasonable expectations of the parties." 303 N.C. at 390, 279 S.E.2d at 771.

Although *Tate I* involved primary insurance, we believe that North Carolina would not adopt a different rule for reinsurance contracts. Reinsurance is an insurance contract having an insurance company as a policyholder. *See* 13A J.A. Appleman & J. Appleman, *Insurance Law and Practice* § 7681 (1976). Counsel have not directed our attention to any cases that distinguish reinsurance from primary insurance with respect to notice. We cannot accept Fortress's contention that this case is governed by *Fortress Re, Inc. v. Jefferson*, 465 F.Supp. 333 (E.D.N.C.1978), *aff'd*, 628 F.2d 860 (4th Cir.1980). In *Jefferson* we applied the traditional primary insurance rule to a reinsurance contract and held that notice was a condition precedent. But in *Tate I*, 303 N.C. at 396, 279 S.E.2d at 774, the Supreme Court of North Carolina overruled the two state cases on which *Jefferson* was based. Moreover, the rejection of the state cases is unequivocal. The overruled cases and the traditional theory they had expressed were supplanted by new principles that are readily adaptable to reinsurance contracts. Consequently, we decline to carve an exception to the new principles explained in *Tate I* by applying the rationale of cases which the Supreme Court of North Carolina has expressly and unequivocally overruled. The district court properly held that the principles explained in *Tate I* are applicable to a reinsurance contract.

## IV

There can be no doubt that Central did not give notice to Fortress as soon as practicable. The district court, therefore, answered the first part of the test prescribed by *Tate I* correctly.

The district court recognized that North Carolina courts had not yet addressed the meaning of the requirement of good faith. In the absence of guidance from the state courts, it rejected Central's contention that good faith was shown by the absence of motive or specific intent not to notify Fortress. The district court carefully canvassed Central's information about the accident, the internal recommendations that interested insurers should be notified, and Central's failure "to take the first step in complying with its contractual obligation." It held: "Under these facts, [Central's] conduct is so lacking in reasonableness and fair dealing that it amounts to a lack of

good faith as a matter of law." 595 F.Supp. at 339.

We now have the guidance that the district court lacked. An opinion of the North Carolina Court of Appeals, decided after the district court entered judgment, provides a helpful analysis of the principles set forth in *Tate I*. In *Great American Ins. Co. v C.G. Tate Construction Co.,* ⸺ N.C.App. ⸺, 328 S.E.2d 891 (N.C.Ct.App. 1985) (*Tate II*), the court of appeals explained the concept of good faith. It first quoted the specific test set forth in *Tate I*: " 'Anyone who knows that he may be at fault or that others have claimed he is at fault and who purposefully and knowingly fails to notify ought not to recover even if no prejudice results.' " *Tate II,* ⸺ N.C. App. at ⸺, 328 S.E.2d at 894. The court of appeals then added this comment:

> This language makes it clear that bad faith is to be measured by a subjective standard, based upon actual knowledge, and an intentional, *i.e.,* purposeful and knowing, failure to notify by the insured. It does not establish an objective standard based upon the conduct of a reasonable person.

⸺ N.C.App. at ⸺, 328 S.E.2d at 894. *Tate II* concluded that the state trial court erred by "allowing unreasonable or unfair dealings to constitute bad faith...." ⸺ N.C.App. at ⸺, 328 S.E.2d at 895. This erroneous standard was applied by the district court, which, of course, did not have the benefit of *Tate II.*

■ Because the standard for determining good faith, applied by the district court differs significantly from that prescribed by *Tate II,* entry of summary judgment on this issue cannot be sustained. Moreover, a subjective standard for determining whether an insured acted in good faith makes it unlikely that the issue can be resolved by summary judgment. Even when basic facts are not in dispute, conflicting inferences can arise on the issue of an insured's intent and purpose. When conflicting inferences reasonably can be drawn from undisputed facts, summary judgment is inappropriate. *American Fi-*

*delity and Casualty Co. v. London and Edinburgh Ins. Co.,* 354 F.2d 214, 216 (4th Cir.1965).

### V

The district court held that Fortress was prejudiced as a matter of law because the untimely notice denied it the contractual right to participate in the defense and control of the claim for which it had bargained. 595 F.Supp. at 339–40. This concept of prejudice, however, is tantamount to making timely notice a condition precedent. The third part of the *Tate I* test is predicated on untimely notice. Nevertheless, despite untimely notice, if the insured acted in good faith, the trial court must answer the following question formulated by *Tate II*: "Was the insurer materially prejudiced by the delay?" ⸺ N.C.App. at ⸺, 328 S.E.2d at 894.

After requiring prompt notice, the reinsurance contract provides:

> [W]hile the Reinsurer does not undertake to investigate or defend claims or suits it shall nevertheless have the right and be given the opportunity to associate with the Company and its representatives at the Reinsurer's expense in the defense and control of any claim, suit or proceeding involving this reinsurance, with the full cooperation of the Company.

Summary judgment was inappropriate because there are genuine issues of material fact. Without attempting to catalog all of these issues, it is sufficient to note that they include the questions of what Fortress would have done had it received timely notice and whether its intervention would have produced a more favorable result.

A reinsurance contract differs from a primary insurance contract with respect to the investigation and defense of claims, especially when the reinsurer has stated that it does not undertake to investigate or defend suits but nevertheless reserves the right to associate in the defense and control of any suit. The question then becomes, was the reinsurer materially prejudiced with respect to its reserved right, which it may or may not have exercised?

Further, if the right would have been exercised, the question remains, would the reinsurer's association with the primary insurer have resulted in a more favorable disposition of the claim? We conclude, therefore, that the prejudice component of the test prescribed in *Tate I* for primary insurance can be adapted to a reinsurance contract. The adaptation is consistent with the rationale of *Tate I* which is based on construing the notice provision "in accord with its purpose and with the reasonable expectation of the parties." 303 N.C. at 390, 279 S.E.2d at 771.

The grant of summary judgment is vacated, and this case is remanded for further proceedings. The parties should be permitted to present further evidence to address the principles explained in *Tate II*. But if no further evidence is introduced, the present record requires submission of the issues of good faith and prejudice to the trier of fact.

VACATED AND REMANDED.